### BYRD'S ADM. VS. BELDING'S HEIRS.

In order to charge the heirs and legal representatives, by decree of a Court of chancery, with the debts of their father, it is incumbent on the complainant, first, to establish his demand against their father; and then make it appear that lands or slaves had descended, or assets been distributed to them from their father's estate, which were chargeable with the payment of the debts. (*Walker ad. vs. Byers,* 15 *Ark.* 253.)

The answer of the defendant, as to a matter within his personal knowledge, being sworn to, and responsive to the bill, must be taken as true, unless it is overturned by two witnesses, or one with strong corroborating circumstances.

After the submission to final hearing and decree of a bill to charge the heirs with a debt of their father, the complainant, having failed to establish by his depositions that the heirs had received any assets, moved a reference to the master to ascertain what assets had come to their hands from their father's estate: *held,* that it was the business of the Court to ascertain from the pleadings and evidence whether the heirs had received assets, etc.: that if they had, then the Court might have required the master to ascertain their character and value.

*Appeal from the Circuit Court of Pulaski county in Chancery.*

The Hon. WILLIAM H. FEILD, Circuit Judge.

TRAPNALL, for the appellant.   The motion for reference should have been sustained.   4 *Litt.* 190; 1 *Mon.* 122; 2 *J. C. R.* 495; 1 *Story Eq.* 432.

FOWLER for the appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 29th of August, 1837, *Aaron N. Sabin*, as administrator of *Ludovicus Belding*, deceased, filed a bill in the Pulaski Circuit Court, against Richard C. Byrd, seeking a decree against him for a sum of money, which the bill charged was due from Byrd to Belding, upon a contract closing up a mercantile partnership, which had previously existed between them.   Byrd answered the bill, and on the 3d of April, 1839, filed a cross-bill against Sabin, as such administrator, praying the allowance of a demand against the estate of Belding for $795, which, he alleged, was due from Belding to him upon the same contract. Sabin answered the cross-bill; and upon an irregular hearing of the two bills, the court decreed to Sabin a part of his demand against Byrd, but refused to allow the claim of Byrd against the estate of Belding.   Byrd appealed from the decree to this Court, and it was reversed for irregularity in the proceedings.   See *Byrd vs. Sabin as ad.*, 3 *Eng. R.* 279.

After the cause was remanded, Sabin filed a replication to the answer of Byrd to the original bill; and Byrd filed a replication to the answer of Sabin to the cross bill; and the cause was set down for hearing.

At the June term, 1849, it seems that the death of Sabin was suggested upon the record, and proceedings upon the original bill terminated.

At the December Term, 1849, Byrd filed a bill of revivor and supplement against Wm. H. Gaines and wife, Maria (formerly Maria Belding), Albert Belding, George Belding and Henry Belding, the heirs and legal representatives of Ludovicus Belding, deceased.   In which, after reciting a history of all the previous proceedings had upon his cross-bill against Sabin, as administrator of Belding, he alleges by way of supplement, that

Sabin had long before his death closed the administration of the estate of Belding, with the exception of the two causes above referred to: " and distributed the same to a large amount, to-wit: the sum of five thousand dollars, to the said defendants, as the heirs of the said Ludovicus, who had long before received by descent from the said Ludovicus, at his death, a large estate in lands." That no administration *de bonis non* had been taken, and none ever would be taken on said estate, etc.

Prayer, that the cause he revived, and proceed against the said heirs of Belding, and that the complainant have the relief against them which he sought against the administrator, etc.

The answer of the heirs of Belding controverts the validity of the demand set up by Byrd against their father, on grounds which we deem it unnecessary to notice; and in response to so much of the bill as charges them with having received assets, etc., they say: "They deny that they have received into their hands of the assets and estate of their said father any thing whatever, or that such estate has been distributed as set forth in the said bill; and they submit to this honorable Court, whether the said Byrd has any right either at law or in equity to call upon these defendants to pay the same even if said demand was due to him from their said father or his said administrator."

A replication was filed to the answer, and the cause came on to be heard upon the pleadings and evidence; and after they were read to the Court (except the deposition of *Robinson*, which the Court excluded) the complainant moved to refer the cause to the master to ascertain what assets had come to the hands of defendants from their father's estate, which the Court overruled, and proceeded to render a decree dismissing the bill for want of equity: from which complainant appealed to this Court.

Afterwards, Byrd departed this life, and his administrator, Marcus L. Bell, was made a party.

In order to entitle Byrd to the relief which he sought against the heirs of Belding, it was incumbent on him first to establish his demand against their father; and then to make it appear

that lands or slaves had descended, or assets had been distributed to them, from their father's estate, which were chargeable with the payment of the debt. See *Walker as adm. vs. Byers*, 15 *Ark*. 253.

Let it be conceded that the demand was proven by the deposition of *Robinson*, and that the Court below should have permitted this deposition to be read as insisted by appellant. Let it also be conceded that the claim was not barred by the Statute of limitations, nor the Statute of non-claim:—all of which questions we deem it unnecessary to decide,—then, let us enquire whether the appellant made out his case against the heirs?

The answer of the heirs, positively denying that any assets or estate of their father whatever, had come into their hands, was sworn to. It was necessarily a matter within their personal knowledge, and being responsive to the bill, must be taken as true, unless it is overturned by the oath of two witnesses, or of one, with strong corroborating circumstances.

The only depositions taken or read by Byrd, on this branch of the case, were those of Lawson Runyon and Mrs. Sabin.

Runyon states that Belding, at the time of his death, left an estate, but he did not know the amount. That Sabin was the administrator, but witness did not know whether the administration had been closed and settled up, or not. He inferred that there was property left in the hands of the *widow*, but how much, or what became of it, he knew not.

His testimony proves nothing in the hands of the heirs. The *widow* of Belding was not a party to the bill.

Mrs. *Sabin* testifies as follows:

" I was informed by the administrator, Aaron N. Sabin, that two negroes, Daniel and Louisa, were the property of said Belding at his death. Also a horse.

" The administrator told me, that he had collected all that could be collected, and that he had returned the estate to Belding's *widow*.

9

" There were the two negroes above named, and the increase of the woman.

" The same negroes were left by the administrator in the possession of the *widow* and *heirs* of said Belding, and still so remain, except Daniel, who has since died."

The appellees excepted to so much of Mrs. Sabin's deposition as stated what the administrator had told her: which was clearly incompetent to charge them.

If the balance of the deposition conduces to prove that the slaves referred to were distributed, or descended to the heirs, from their father's estate, it is only the deposition of one witness, without any corroborating circumstances: and fails to overturn the truth of the answer.

The loose and uncertain allegation in the bill, that the heirs had received, by descent from their father, a large estate in lands, is sustained by no proof whatever.

But the appellant insists that the Court should have referred the cause to the master to ascertain what assets had come to the hands of the appellees from their father. The proposition amounts to this:—After the complainant had submitted the cause for final hearing and decree, and the pleadings and evidence had been read to the Court, the depositions of complainant failing to establish the very point at issue—that the heirs had received assets, subject to the satisfaction of their father's debt— he moved the Court to refer the matter to the master to make out the case for him. It was the business of the Court to ascertain from the pleadings and depositions in the case, whether the heirs had received assets, etc., subject to be charged with the payment of complainant's debt. If not, the complainant was entitled to no decree against them. If they had, the Court then might have required the master to ascertain and report the character and value of such assets, etc. As to the powers and duty of a master, see *Digest ch.* 28, *sec.* 70. *Remsen vs. Remson,* 2 *Johns. ch. R.* 495.

After a careful examination of the whole record in this case, we have concluded to affirm the decree of the Court below, and

thus finally terminate a litigation which has been protracted for nearly twenty years, and survived both of the parties to the contract out of which the disputation arose.

Absent, Hon. T. B. HANLY.